[Civ. No. 4104. Third Appellate District.—May 20, 1930.]

GEORGE E. MERRILL, Respondent, v. CALIFORNIA PETROLEUM CORPORATION (a Corporation), Appellant.

Charles C. Stanley and R. K. Barrows for Appellant.

Fredericks, Hanna & Morton for Respondent.

FINCH, P. J.—This is an appeal by the defendant from a judgment in favor of the plaintiff for the price of oil purchased by the defendant. The facts are undisputed.

On January 13, 1926, W. Irving Lake, who was the owner of an oil and gas lease on a royalty basis, entered into an agreement to sell to the defendant all the oil to be produced under the lease, to be paid for at the market price. The agreement provides "that if he (Lake)· sells, conveys, assigns, transfers, sublets or incumbers said lease or the leasehold estate created thereby, or any interest in said lease or leasehold estate, or the oil to be produced from said premises, he will make such sale, conveyance, assignment, transfer, sublease, or incumbrance expressly subject to and subordinate to this agreement."

On January 15, 1926, Lake entered into an agreement with the plaintiff, entitled "Assignment of Royalty Interest Under Oil and Gas Lease," relating to the lease mentioned, and containing the following:

"Whereas, the assignee hereunder is purchasing from the assignor (Lake) a twelve and one-half per cent royalty interest in and to the premises under said lease;

"Now, therefore, for and in consideration of the sum of $10 and other good and valuable consideration . . . the above named assignor does hereby assign, transfer, grant, set over and convey unto the above named assignee twelve and one-half per cent of all oil, gas and kindred substances produced, saved and marketed from said premises under said lease. . . . It is understood that the assignor has sold all of the oil that may be produced from said lease to California Petroleum Corporation, at market price."

■ The reference in the title of the instrument and in the recital to the property transferred as a "royalty interest" may be disregarded, the granting clause being express and certain in the description of the property intended to be conveyed. (13 C. J. 538; *Monks* v. *Provident Inst. for Sav. in Jersey City*, 64 N. J. L. 86 [44 Atl. 968]; *Clark* v. *Post*, 113 N. Y. 17 [20 N. E. 573].)

Lake drilled a well as required by the terms of the lease and by the terms of his contract with the defendant and his assignment to the plaintiff, and the well produced oil in large quantities. The defendant received and paid for all of the oil so produced up to August 1, 1926.

The agreement between Lake and the defendant provided that the defendant, if it deemed such action necessary for the protection of its interest, should have the right to take possession of the leased premises, and the wells, tools, equipment and property of Lake thereon, and operate the same, and "after paying lessor's royalties from the amount due for seller's oil, deduct and keep all costs and expenses paid out or incurred by it," and out of the balance, if any, "apply upon seller's indebtedness to it a sum equal to the value of thirty per cent of the total production from said lease," paying the balance, if any, to Lake.

It was stipulated at the trial "that the defendant had charge of the operations of the well on the property in question" during the period from August 1, 1926, to April 30, 1927, and "during that time defendant had paid out certain monies in operating the well and . . . the defendant had not paid anyone for any crude oil received" during that period, "except to pay the lessors under the lease . . . their twenty per cent royalty reserved under such lease."

■ It was stipulated, subject to the plaintiff's objection "on the ground of immateriality, irrelevancy and incompetency," that Lake was adjudged a bankrupt on September 14, 1926, and that "on December 28, 1926, the oil lease referred to in the complaint, and all personal property belonging to the bankrupt estate, situated on the premises described in said lease, were sold . . . to A. P. Wallace, pursuant to an order of sale . . . in said bankruptcy proceedings." The answer contained a paragraph alleging the facts so stipulated, but the plaintiff made a motion to strike out that paragraph and the same was ordered stricken out

on the written stipulation of the parties. It does not appear that the proceedings in the bankruptcy court are material to any issue in the case. Wallace is not a party to this action and it does not appear that he, or any other person, ever made any adverse claim to the oil in controversy or the proceeds thereof. Neither does the appellant claim ownership of such proceeds. If some other person claimed ownership of such property, section 386 of the Code of Civil Procedure provides a simple and inexpensive procedure for the substitution of such person as defendant in the action.

Appellant contends that "the oil attempted to be transferred was a mere possibility" which could not be sold, citing *Graciosa Oil Co.* v. *Santa Barbara County,* 155 Cal. 140 [20 L. R. A. (N. S.) 211, 99 Pac. 483, 486]. That case, however, does not support the appellant's contention. The plaintiff therein was the owner of an oil lease on a royalty basis. The court said:

"The plaintiff, it is true, does not own an absolute present title to the oil strata in place. . . . The right vested in plaintiff is an estate for years, so far as necessary for the purpose of taking oil therefrom, and it carries with it the right to extract the oil and remove it from the premises. This right constitutes, for the term prescribed, a servitude on the land and a chattel real at common law. . . . His (lessee's) right extends to the extraction of a certain part of the substance of the land itself, to its permanent separation and removal and its conversion to his own use. The whole object of the contract is to effect, if not technically a sale and conveyance of a substantial and specific part of the land, at least a disposition and transfer thereof to another. . . . The rights and privileges of the plaintiff under this lease are private property. . . . The strata of oil, or oil bearing sand, constitute . . . a part of the land which may be the subject of separate ownership. There may be a separate claim to this part of the land, as well as a separate claim to a portion of the surface. A claim to take this stratum from its place and then convert it to one's own use may well be termed a claim to land, although not accomplished by actual physical possession of the subterranean deposit."

In *Chandler* v. *Hart,* 161 Cal. 405, 414 [Ann. Cas. 1913B, 1094, 119 Pac. 516, 520], the court had under consideration a lease which was similar in terms to the one involved in this case, except that the consideration for the execution of the lease by the land owner consisted of an agreed number of shares of the capital stock of the lessee instead of a share of the oil to be produced. The court said:

"The estate of the lessee is not a mere possibility not coupled with an interest, which, by section 1045 of the Civil Code, is not transferable, but is a present subsisting estate for years which may be transferred, the same as any other species of property."

"Property may be the subject of a sale if it has a potential or possible existence, as the product or increase of that which is in existence, and the right to it when it shall come into existence is a present vested right. In such case, the sale is absolute and perfect when made, vesting the property in the purchaser the moment it comes into existence. In all such cases, the thing sold has a potential existence, and the hopes or expectations of means founded on a right *in esse* is the object of sale. A mere possibility or contingency not founded on a right, or coupled with an interest, cannot be the subject of a present sale, though it may often be of an executory contract to sell. A mere possibility or expectancy of acquiring property, not coupled with any interest, does not constitute a potential interest in it, within the meaning of the rule allowing a valid sale of such potential interest." (23 R. C. L. 1244; *Hamilton* v. *Klinke,* 42 Cal. App. 426, 431, 433 [183 Pac. 675].)

From the foregoing authorities it appears that the deposit of oil involved was a part of the land in which it was found; that Lake's right to extract the oil was "private property," a "claim to land, although not accompanied by actual physical possession of the subterranean deposit"; that such claim was "founded on a right" vested in him by the terms of the lease, a right "coupled with an interest." ▇ While the oil in its natural deposit was a part of the land, it was in actual existence as part of the land and was potentially personal property under the terms of the lease and actually became personal property to the extent of the amount thereof involved in this action when the lessee exercised his right to extract it.

■ The defendant demurred to the complaint ''on the ground that there is a defect of parties plaintiff therein in this: that it appears therefrom that W. Irving Lake is a necessary party plaintiff.'' By the sale to the plaintiff, he and Lake became tenants in common in the oil produced. The agreement between the defendant and Lake implies that he retained the right to sell a part of the oil to be produced, subject to the defendant's rights under the agreement.

''All persons holding as tenants in common, . . . or any number less than all, may jointly or severally commence or defend any civil action or proceeding for the enforcement or protection of the rights of such party.'' (Code Civ. Proc., sec. 384; see, also, *Lee Chuck* v. *Quan Wo Chong & Co.,* 91 Cal. 593, 599 [28 Pac. 45]; *Muller* v. *Boggs,* 25 Cal. 175, 187; *Messersmith* v. *Smith,* 62 Cal. App. 446, 447 [217 Pac. 105].)

■ The complaint states the same cause of action in various forms in four different counts. Appellant contends that the evidence does not support the findings on the issues tendered by the second, third and fourth counts. The findings on the first count are fully supported by the evidence and such findings are sufficient to sustain the judgment. It is immaterial, therefore, whether the other findings are warranted.

The judgment is affirmed.

Plummer, J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 20, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 17, 1930.